1
2
3
4
5
6
7
8                      **UNITED STATES DISTRICT COURT**

9                     **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CRAIG R. BELL, individual d/b/a
     DESTINEE' — EPLORIUMS,                       CASE NO. 05CV2151 JLS (BLM)

12                  Plaintiff/Counterdefendant,   **ORDER (1) GRANTING
                                                  DEFENDANTS' MOTION FOR**
13          vs.                                   **SUMMARY JUDGMENT, (2)
                                                  DENYING PLAINTIFF'S MOTION**
14                                                **FOR SUMMARY JUDGMENT, and
                                                  (3) GRANTING JOINT MOTION**
15   HARLEY DAVIDSON MOTOR                        **TO VACATE SCHEDULING**
     COMPANY, et al.,                             **ORDER**
16
                  Defendants/Counterclaimants.    (Doc. Nos. 92, 102, 182)
17

18
            Presently before the Court are cross-motions for summary judgment by plaintiff Craig R.
19
     Bell (Doc. No. 92) and defendants Harley-Davidson Motor Company and H-D Michigan, Inc.
20
     (together, "Harley-Davidson") (Doc. No. 102), along with a joint motion to vacate the Court's
21
     prior Scheduling Order and set new pretrial dates (Doc. No. 182).  Both plaintiff and defendants
22
     seek summary judgment on all seven counts of the complaint.  Bell has not established the
23
     elements of federal trademark infringement as a matter of law, and the fair use defense bars such a
24
     cause of action.  All of Bell's remaining claims are either dependent on the cause of action for
25
     federal trademark infringement or not cognizable, as a matter of law.  Therefore, the Court grants
26
27
28

Harley-Davidson's motion and denies Bell's motion.[1]  To give the parties adequate time to prepare for trial on Bell's remaining counterclaims,[2] the Court grants the joint motion to vacate the prior Scheduling Order and sets new pretrial dates.

## BACKGROUND

**A.     Facts**

The parties have submitted a joint statement of undisputed material facts ("JSUMF"). Harley-Davidson Motor Company has been in the business of motorcycle manufacturing since 1903 and also offers accessories, apparel, and general merchandise bearing the Harley-Davidson logo.  (JSUMF Nos. 1-3.)  H-D Michigan, Inc. owns the Harley-Davidson trademarks and licenses them to the Harley-Davidson Motor Company.  (Id. No. 3.)  Harley-Davidson first used the phrase "ride hard" back in 1988 when "Ride Hard or Stay Home" appeared in one of its advertisements.  (Id. No. 11.)  The phrase "Hard Ride" first appeared on a Harley-Davidson T-shirt in 1993.  (Id. No. 12.)  The phrase has subsequently appeared on such merchandise as bumper stickers, caps, headbands, floormats, bandanas, decals, and lighters.  (Id. No. 13.)  Whenever advertising or merchandise bears the "Ride Hard" phrase, it is also branded with a Harley-Davidson trademark, such as the phrase "Harley-Davidson" or the bar and shield logo.  (Id. No. 14.)

In 1994, Bell first began using the phrase "ride hard" on apparel sold through his business, Ride Hard International.  (Id. No. 16.)  That same year, Bell claimed "ride hard" as a trademark before the Patent and Trademark Office, and obtained three additional federal trademark registrations in 1995 and 1996.[3]  (Id. Nos. 17-18.)  Ride Hard International's sales dropped to

---

[1] Each party has filed a request for judicial notice and objections to the evidence submitted by the other side.  The Court grants the respective requests for judicial notice to the extent that they are necessary to disposing of the present motions.  Furthermore, in deciding the motions, the Court has considered only admissible evidence.

[2] The Court acknowledges counsel's non-binding representation at oral argument that Harley-Davidson would dismiss all of its counterclaims if the Court granted summary judgment in its favor.

[3] The initial application in 1994 sought registration of Bell's "Ride Hard" trademark for various enumerated clothing items.  (Request for Judicial Notice ("RJN"), Exhibit A, at 7.)  The subsequent applications obtained protection for its use of printed materials, namely decals; sporting goods, including bicycles, skateboards, protective helmets, and pads; and sporting goods accessories, including, inter alia, beverage containers, bags, and backpacks.  (Id., Exhibit B, at 22; Exhibit C, at 35; Exhibit D, at 49.)

1    almost zero by 1998.  (<u>Id</u>. No. 19.)  Between 2001 and 2005, Bell sold no products bearing the

2    "ride hard" trademark and had no licensees selling such products.  (<u>Id</u>. Nos. 25, 27.)  Nonetheless,

3    during this period, Bell submitted statutory affidavits to the PTO that his registered trademarks

4    were in use in commerce in connection with all the goods listed on the registration.  (<u>Id</u>. No. 28.)

5    Since 2005, Bell sold two T-shirts and a keychain with the "Ride Hard" trademark for a total of

6    $48.98.  (<u>Id</u>. No. 33.)  These sales were made through the ridehard.com website, which Bell

7    licenses to a former business partner.  (<u>Id</u>. No. 34.)

8    **B.**      **Procedure**

9        Bell filed the complaint in this action on November 21, 2005.  (Doc. No. 1.) He

10   enumerated seven causes of action: (1) federal trademark infringement, (2) federal common-law

11   trademark and trade dress infringement, (3) express passing-off, (4) reverse confusion, (5)

12   unauthorized use of mark for enhancement of the commercial value of the user's product, (6) state-

13   law claims for unfair competition and deceptive trade practices, and (7) misappropriation.  Bell

14   prayed for a permanent injunction against, <u>inter</u> <u>alia</u>, Harley-Davisdon's further use of the term

15   "Ride Hard," forfeiture of all merchandise and advertising that bear the "Ride Hard" trademark,

16   statutory damages,[4] and attorneys' fees.  The action was originally assigned to the Hon. M. James

17   Lorenz.  After Judge Lorenz's Order granting in part and denying in part plaintiff's motion to

18   dismiss the counterclaims and motion for judgment on the pleadings (Doc. No. 50), Harley-

19   Davidson filed its third amended answer and counterclaims on March 19, 2007 (Doc. No. 51).

20        Harley-Davidson filed its motion for summary judgment on May 15, 2007.  (Doc. No. 92.)

21   Bell filed his motion for summary judgment on May 25, 2007.  (Doc. No. 102.)  Harley-Davidson

22   filed its consolidated opposition and reply on June 8, 2007.  (Doc. No. 141.)  Bell filed his reply on

23   June 15, 2007.  (Doc. No. 142.)

24        On October 3, 2007, this case was reassigned to the Hon. Janis L. Sammartino.  The Court

25   heard oral argument on the cross-motions on January 11, 2008 and then took the matters under

26   submission.  On February 22, 2008, while the motions were under submission, the parties filed a

27

28        [4] Statutory damages are equal to defendant's profits, any damages (up to three times actual damages), and costs.  15 U.S.C. § 1117(a).

1   joint motion to vacate the pretrial dates set in the Court's prior Scheduling Order because the

2   Court's disposition of the cross-motions for summary judgment "may impact the issues to be

3   addresse[d] at trial[.]" (Doc. No. 182, at 2.)

4                                    **LEGAL STANDARD**

5          Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on

6   factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

7   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

8   admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

9   material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

10  56(c).  A fact is material when, under the substantive governing law, it affects the outcome of the

11  case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d

12  732, 735 (9th Cir. 1997).  A "genuine issue" of material fact arises "if the evidence is such that a

13  reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

14  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."

15  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

16         The party moving for summary judgment bears the initial burden of establishing the

17  absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  When the moving party

18  bears the burden of proof on an issue—whether on a claim for relief or an affirmative

19  defense—the party "must establish beyond peradventure all of the essential elements of the claim

20  or defense to warrant judgment in its favor."  Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th

21  Cir. 1986); see S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003).  And,

22  where the moving party carries its initial burden of production, the nonmoving party cannot "rest

23  upon mere allegation or denials of [the pleadings]."  Anderson, 477 U.S. at 256.  Rather, the non-

24  movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers

25  to interrogatories, and admissions on file, designate specific facts showing that there is a genuine

26  issue for trial."  Celotex, 477 U.S. at 324 (internal quotations omitted); Anderson, 477 U.S. at 256;

27  Nissan Fire, 210 F.3d at 1103.

28         When ruling on a summary judgment motion, the court cannot engage in credibility

1  determinations or weighing of the evidence; these are functions for the jury.  Anderson, 477 U.S.

2  at 255.  The court must view the evidence in the light most favorable to the nonmoving party, and

3  draw all reasonable inferences in favor of the non-movant.  Matsushita Elec. Indus. Co. v. Zenith

4  Radio Corp., 475 U.S. 574, 587 (1986); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180

5  (9th Cir. 2002).  The court is not required "to scour the record in search of a genuine issue of

6  triable fact," Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review

7  to the documents submitted for purposes of summary judgment and those parts of the record

8  specifically referenced therein," Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir.

9  2001).

**DISCUSSION**

10

11  **A.     Bell's Motion**

12          1.     Trademark Infringement

13          The federal trademark statute, the Lanham Act, has two provisions on trademark

14  infringement.  Section 32(1) applies to federally registered trademarks and imposes civil liability

15  for

16          us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a
        registered mark in connection with the sale, offering for sale, distribution, or
17          advertising of any goods or services on or in connection with which such use is
        likely to cause confusion, or to cause mistake, or to deceive[.]
18

19  15 U.S.C. § 1114(1)(a).  Section 43(a)(1) provides similar protection to trademarks regardless of

20  registration.[5]  15 U.S.C. § 1125(a)(1); Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174

21  F.3d 1036, 1046 n.6 (9th Cir. 1999).  The standard for trademark infringement is essentially

22  identical under both federal and California law.  Academy of Motion Picture Arts & Sciences v.

23  Creative House Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991); E.S.S. Entm't 2000, Inc. v.

24  Rock Star Videos, Inc., 444 F. Supp. 2d 1012, 1049 (C.D. Cal. 2006).  "To establish a trademark

25  infringement claim . . . , [Bell] must establish that [Harley-Davidson] is using a mark confusingly

26  ───────────────

27          [5] In the statutory language, § 43(a)(1) imposes civil liability on "[a]ny person who, on or in
connection with any good or services, . . . uses in commerce any word, term, name, symbol, or device,
or any combination thereof, . . . which—(A) is likely to cause confusion, or to cause mistake, or to
28  deceive . . . as to the origin, sponsorship, or approval of his or her goods, services or commercial
activities by another person."  15 U.S.C. § 1125(a)(1)(A).

similar to a valid, protectable trademark of [Bell's]."  Brookfield Communications, 174 F.3d at 1046.

Two obstacles prevent Bell from establishing trademark infringement at the summary judgment phase.  First, although registration of the mark with the Patent and Trademark Office creates a presumption of validity, Harley-Davidson "can rebut this presumption by showing that it used the mark in commerce first, since a fundamental tenet of trademark law is that ownership . . . is governed by priority of use."  Brookfield Communications, 174 F.3d at 1047; accord Sengoku Works, Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996) ("the party claiming ownership must have been the first to actually use the mark in the sale of goods and services").  Here, there is at least a material dispute of fact whether Harley-Davidson first used in commerce the phrase "Ride Hard" when it printed "Ride Hard or Stay Home" in a 1988 advertisement and "Hard Ride" on a 1993 T-shirt.  The appearance of the phrase in an advertisement, rather than on actual merchandise, is a distinction without a difference.  See Packman v. Chi. Tribune Co., 267 F.3d 628, 634, 643 (7th Cir. 2001) (finding fair use where newspaper used registered trademark both on memorabilia and in headline, without distinguishing the two); Citrus Group, Inc. v. Cadbury Beverages, Inc., 781 F. Supp. 386, 391-92 (D. Md. 1991) (denying preliminary injunction by analyzing defendant's use of trademarked phrase both in advertisements and on merchandise).  Because Harley-Davidson's prior usage would rebut the presumption of validity of Bell's trademark, Bell is unable to establish, as a matter of law, that his "Ride Hard" trademark is valid.

Second, Bell's claim fails at the summary judgment phase because likelihood of confusion is determined by a fact-intensive, eight-factor test[6].  "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse consumers about the source of the products."  E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992).  The Ninth Circuit has noted, "courts disfavor deciding trademark

---

[6] The eight factors are (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines.  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979); Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 631 (9th Cir. 2005); Premier Nutrition, Inc. v. Organic Food Bar, Inc., 475 F. Supp. 2d 995, 1004 (C.D. Cal. 2007).

1   cases in summary judgments because the ultimate issue is so inherently factual.  Additionally, the

2   question of likelihood of confusion is routinely submitted for jury determination as a question of

3   fact."  Levi Strauss & Co. v. Blue Bell, Inc., 778 F.3d 1352, 1356 n.5 (9th Cir. 1985) (internal

4   citation omitted).  In Dreamwerks Production Group, Inc. v. SKG Studio, the plaintiff was an

5   organizer of Star Trek conventions and alleged that the defendant Dreamworks movie studio

6   infringed the "Dreamwerks" trademark.  142 F.3d 1127, 1128 (9th Cir. 1998).  After reviewing the

7   three "pivotal" factors of the multi-factor test, the Ninth Circuit reversed the district court's grant

8   of summary judgment to the defendant and remanded the question of trademark infringement for

9   trial.  Id. at 1132.[7]

10       Applied to these facts, a reasonable jury could find that Harley-Davidson's use of "Ride

11   Hard" is not likely to confuse consumers as to the source of Harley-Davidson's products.  Viewing

12   the facts in the light most favorable to Harley, Bell has submitted no evidence of actual confusion.[8]

13   (Ray Decla., Exhibit E (Bell Depo.), at 139:17—141:3.)  Furthermore, Harley-Davidson's use of

14   "Ride Hard" is meaningfully different from Bell's trademark, in the sense that Bell's trademark

15   has a stylized "brush stroke," and Harley-Davidson uses standard or cursive script.  Also, the

16   presence of the Harley-Davidson name (or its bar-and-shield logo) reduces the likelihood of

17   confusion.  Cohn v. Petsmart, Inc., 281 F.3d 837, 842 (9th Cir. 2002); Matrix Motor Co., Inc. v.

18   Toyota Jidosha Kabushiki Kaisha, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003).  Finally, by

19   merely alleging that both parties sell products through the Internet, Bell has not established

20   sufficient overlap in marketing channels.  See Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135,

21   1151 (9th Cir. 2002) ("Some use of the Internet for marketing . . . does not alone and as a matter of

22   law constitute overlapping marketing channels.")

23       This analysis is sufficient to show that Bell cannot prevail on his claim of federal

24

25       [7] In fact, Harley-Davidson concedes that, if the Court rejects its affirmative defenses at the
    summary judgment phase, the question of trademark infringement must go to the jury because neither

26   side can prevail on the likelihood-of-confusion question on summary judgment.  See Defs. Consol.
    Opp & Reply, at 28:19-22 ("The only area where a genuine issue of fact does exist is in the context

27   of Bell's likelihood of confusion claims.  But this genuine issue of fact only serves as a further reason
    to deny Bell's summary judgment motion.")

28       [8] Indeed, Bell concedes that he had no evidence of actual confusion when he moved for
    summary judgment.  (Bell Memo. ISO Motion, at 18.)

1   trademark infringement, as a matter of law. Therefore, the Court denies summary judgment on

2   Bell's first, third,[9] and fourth[10] causes of action. The Court also denies summary judgment on the

3   fifth cause of action, which contains both federal and state trademark infringement claims. See

4   Playboy Enters., Inc. v. Netscape Commc'ns Corp., 354 F.3d 1020, 1024 n.10 (9th Cir. 2004)

5   (describing California trademark claims as "substantially congruent" to federal law).

6          2.      Remaining Causes of Action

7          Bell's second cause of action, alleging unfair competition under the Lanham Act, is

8   actually a claim for trade dress infringement. "Trade dress refers generally to the total image,

9   design, and appearance of a product and 'may include features such as size, shape, color, color

10  combinations, texture or graphics.'" Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252,

11  1257 (9th Cir. 2001) (quoting Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th

12  Cir. 1983)). Bell argues that his second cause of action presents a question of first impression

13  because there is no authority for trade dress infringement regarding "words alone." (Bell Memo.

14  ISO Motion, at 25.) The absence of authority mandates this Court to deny summary judgment on

15  this cause of action; otherwise, by analyzing only the words "Ride Hard," the Court would run

16  afoul of the Ninth Circuit's directive that, in trade dress infringement cases, "the mark must be

17  examined as a whole, not by its individual constituent parts." Id. at 1259 (citing cases).

18  Correspondingly, the Court denies summary judgment on plaintiff's sixth cause of action for

19  violation of California's unfair competition laws (including Business and Professions Code §

20  17200). See Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) (affirming dismissal of

21  Lanham Act claims and holding that district court properly dismissed state common-law and

22  statutory claims for unfair competition because those claims were "substantially congruent" to

23  _____

24          [9] Bell concedes that the third cause of action for "express passing-off" is just another form of
     federal trademark infringement. (Bell Memo. ISO Motion, at 28.)

25          [10] Reverse confusion is a form of trademark infringement, wherein "consumers doing business
     with the senior user might mistakenly believe that they are dealing with the junior user." Dreamwerks

26   Production Group, 142 F.3d at 1130. In other words, Bell is alleging that consumers purchasing
     products bearing his "Ride Hard" trademark might mistakenly believe that they are purchasing a

27   Harley-Davidson product. Reverse confusion presents a different question from the "usual" trademark
     infringement case, wherein the junior user passes off its products as those of the senior user (typically

28   a better-known company). Id. at 1129-30. In either type of case, the Court analyzes the same eight
     factors. Id. at 1130.

1    Lanham Act claims).

2        Finally, the Court denies summary judgment on Bell's claim for misappropriation.  Bell

3    bases this claim on both federal and state law.  The federal component cites the statute for

4    prohibiting infringement of trademarks regardless of registration, 15 U.S.C. § 1125(a).  The Court

5    denies summary judgment on the federal component for the reasons discussed in the Court's

6    analysis of trademark infringement supra.  Black-letter law holds that California's common-law

7    doctrine of misappropriation does not extend to trademark infringement claims.  Toho Co., Ltd. v.

8    Sears, Roebuck & Co., 654 F.2d 788, 791 (9th Cir. 1981); Mattel Inc. v. MCA Records, Inc., 28 F.

9    Supp. 2d 1120, 1157 (C.D. Cal. 1998).

10       Because Bell does not prevail on any of his seven causes of action as a matter of law, the

11   Court denies Bell's motion in its entirety.

12   **B.      Harley-Davidson's Motion**

13           1.      Trademark Infringement/Fair Use

14               *a.      Legal Standard*

15       Fair use is an affirmative defense to trademark infringement.  The Lanham Act defines fair

16   use as a defense when "the use of the . . . term, or device charged to be an infringement is a use,

17   otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in

18   good faith only to describe the [defendant's] goods or services[.]" 15 U.S.C. § 1115(b)(4).  Here,

19   Harley-Davidson alleges a "classic fair use" defense[11] because it claims to "ha[ve] used the

20   plaintiff's mark only to describe [its] own product, and not at all to describe the plaintiff's

21   product."  Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 809 (9th Cir. 2003) (emphasis

22   deleted).  Summarized generally, the rule of the fair use defense is that "'[a] junior user is always

23   entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a

24   trademark.'"  Cairns v. Franklin Mint Co., 292 F.3d 1139, 1150-51 (9th Cir. 2002) (quoting 2

25   McCarthy on Trademark and Unfair Competition § 11.45 (4th ed. 2001)); see New Kids on the

26   Block v. News Am. Publ'g, Inc., 971 F.2d 302, 306 (9th Cir. 1992) (classic fair use "forbids a

27

28       _____

[11] In the other type of case, which presents a "nominative" fair use defense, the defendant uses
the plaintiff's mark to describe the plaintiff's product.

1    trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others

2    from accurately describing a characteristic of their goods" (internal quotation omitted)).  The

3    precise elements of the classic fair use defense are that the defendant (1) is not using the term as a

4    trademark, (2) uses the term only to describe its goods and services, and (3) uses the term fairly

5    and in good faith. Cairns, 292 F.3d at 1151.

6         According to the Supreme Court, "the defendant has no independent burden to negate the

7    likelihood of any confusion in raising the affirmative defense" of fair use.  KP Permanent Make-

8    Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 124 (2004).  Therefore, "some possibility of

9    consumer confusion must be compatible with fair use[.]" Id. at 121; Century 21 Real Estate Corp.

10   v. Lendingtree, Inc., 425 F.3d 211, 217 (3d Cir. 2005).  The fair use defense recognizes "the

11   undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term

12   simply by grabbing it first."  KP Permanent Make-Up, 543 U.S. at 122.

13                  b.    Butters Report

14        To support its fair use argument, Harley-Davidson submits the sworn declaration of Ronald

15   R. Butters, Ph.D., a professor of English and Cultural Anthropology at Duke University.[12]  (Butters

16   Report ¶ 1.)  He is an expert in English linguistics.  (Id. ¶ 2.)  Dr. Butters concludes that the phrase

17   "Ride hard" is "a well-known catchphrase associated generally with the vigorous exercise of

18   horse-riding, biking, motorcycling, and the general pursuit of life."  (Id. ¶ 8(i).)  Noting the

19   widespread usage of "Ride hard" in the advertising of a variety of businesses—either to describe

20   the durability of their products or the hardy attributes of customers using those products—Dr.

21   Butters concluded the phrase "is not associated linguistically with any particular brand of goods or

22   services, but rather only with general categories of rideable things such as horses, bicycles,

23   motorcycles, and the like."  (Id. ¶ 8(ii).)  With respect to the commercial use of "Ride hard," Dr.

24   Butters noted:

25            [i]n recent years, advertisers have sometimes made use of the catchphrase ride hard
              as a descriptor of their products with the implication of a laudatory application to
26

27        [12] Bell did not submit an expert report in support of his motion for summary judgment.  In his
     reply, he included a rebuttal report authored by himself.  Bell does not have any particular credentials
28   comparable to Dr. Butters's qualifications.  His rebuttal report consists mainly of legal argument on
     the fair use doctrine.

05cv2151

1    those who use their products.  In addition, manufacturers of clothing and personal
2    items have used ride hard as a feature intended to allow purchasers . . . to project
     the self-image that ride hard conveys.

3    (Id. ¶ 19.)  Dr. Butters found the phrase used in advertisements for bicycle seat covers, T-shirts,

4    magnets, motor oil, skateboards, motorcycle-themed check designs, and sports bikes.[13]  (Id. ¶ 20.)

5              c.    *Analysis*

6         The Court finds that Harley-Davidson prevails, as a matter of law, on all three elements of

7    the fair use defense.  First, Harley-Davidson does not use "Ride Hard" as a trademark, i.e., to

8    identify the source of its products.  See New Kids on the Block, 971 F.2d at 308 (discussing "the

9    source-identification function that is the purpose of trademark").  Harley-Davidson never

10   registered "Ride Hard" as a trademark, nor did it locate the phrase on its merchandise (e.g., hang

11   tags or labels) where one would expect to find the source-identifiers of a product.  (First

12   Bischmann Decla. ¶¶ 13, 15.)  Furthermore, Harley-Davidson does not use "Ride Hard"

13   exclusively, but instead employs a wide variety of riding-related slogans on its products.  (Id. ¶ 6

14   & Exhibit A.)

15        Second, the Court finds that Harley-Davidson only used "Ride Hard" descriptively.

16   Specifically, the evidence supports the Butters Report's conclusions that the "Ride Hard" phrase

17   "is today employed to reference the vigorous and energetic manner in which people ride and race"

18   and "attract[s] customers by implying that the products and services offered appeal to people who

19   possess the virtues of strength, energy, [and] hardiness[.]" (Butters Report ¶¶ 26-27.)  In this case,

20   Harley-Davidson used "Ride Hard" to describe the prospective consumer's response to riding a

21   Harley-Davidson motorcycle or wearing apparel with the trademarked Harley-Davidson logo.

22        Although Bell protests that such a use does not describe a specific characteristic of

23   Harley's products or goods, courts do not interpret the Lanham Act's fair use language so

24   narrowly.  To the contrary, courts have applied the fair use doctrine in situations where the

25

26        [13] The commercial pervasiveness of "ride hard," as evidenced in the Butters Report, also
27   supports the Court's denial of Bell's motion for summary judgment.  "[T]hat the marketplace is replete
     with products using a particular trademarked word indicates not only the difficulty in avoiding its use
     but also, and directly, the likelihood that consumers will not be confused by its use."  Entrepreneur
28   Media, 279 F.3d at 1144; Halo Mgmt., LLC v. Interland, Inc., 308 F. Supp. 2d 1019, 1037 (N.D. Cal.
     2003).

1  defendant's use of the trademarked phrase described a feeling inherently associated with the

2  phrase or typically experienced by the consumer upon using defendant's product.  See

3  Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30 (2d Cir. 1997)

4  (holding that defendant's use of "Seal it with a kiss!!" in lipstick promotion did not infringe

5  plaintiff's trademark in the phrase "Sealed with a kiss" because defendant's use of the phrase

6  described "an action that the [defendant] sellers hope consumers will take, using their product");

7  accord Packman, 267 F.3d at 641 (finding that defendant newspaper entitled to fair use defense

8  because it used "the joy of six" to describe the happiness that readers would feel toward the

9  hometown professional basketball team's sixth world championship); Citrus Group, 781 F. Supp.

10  at 388 (concluding that use of trademarked phrase "main squeeze" in marketing of fruit-flavored

11  ginger ales "was intended only to engender a sense of romance, incite enthusiasm, and create an

12  association between the consumer and the product").  Applied to these facts, Harley-Davidson

13  descriptively used "Ride Hard" to capture the consumer's intended reaction of vigor and energy to

14  Harley-Davidson products and merchandise.

15      Finally, the Court finds that Harley-Davidson used "Ride Hard" fairly and in good faith.

16  "[T]he standard for good faith for fair use . . . asks whether the alleged infringer intended to trade

17  on the good will of the trademark owner by creating confusion as to the source of the goods or

18  services."  Int'l Stamp Art, Inc. v. United States Postal Serv., 456 F.3d 1270, 1274-75 (11th Cir.

19  2006) (citing cases from five other circuits, including the Ninth Circuit).  Here, Harley-Davidson

20  demonstrated its intent not to create confusion by including the Harley-Davidson name or bar-&-

21  shield logo on every advertisement and piece of merchandise bearing the "Ride Hard" phrase.

22  (First Bischman Decla. ¶ 14.)  Furthermore, Harley-Davidson's ongoing use of "Ride Hard" and

23  its variants merely continues a marketing strategy that began back in 1988, six years before Bell

24  first obtained his trademark.

25      Under these facts, Harley-Davidson is not legally required to abandon "Ride Hard" for a

26  similar phrase.  Admittedly, in some cases, Harley-Davidson's "choice of ['Ride Hard'] when

27  other phrases were available could indicate an intent to trade on [Bell's] good will and product

28  identity."  Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1423 (9th Cir. 1984).  As

1    Bell points out, Wrangler Clothing Company abandoned "Ride Hard" and substituted "Ride

2    Rough" in response to his 1999 lawsuit.  (Bell Reply, Exhibit 1, at 4.)  However, the crux of the

3    fair use doctrine is to "forbid[] a trademark registrant to appropriate a descriptive term for his

4    exclusive use and so prevent others from accurately describing a characteristic of their goods."

5    New Kids on the Block, 971 F.2d at 306.  Here, Bell is trying to force Harley-Davidson to

6    abandon "Ride Hard," a phrase with a long-established meaning as a descriptor of a feeling

7    associated with "the vigorous exercise of horse-riding, biking, motorcycling, and the general

8    pursuit of life."  (Butters Report ¶ 26.)  Whatever the source-identifying significance of Bell's

9    trademark, he cannot hold the phrase hostage against an entity such as Harley-Davidson, which

10   invokes the phrase's long-established meaning to describe the reaction of prospective consumers

11   upon purchasing its products and merchandise.

12         Finally, Bell argues that Harley-Davidson's use of "Ride Hard" is not in good faith because

13   Harley-Davidson has opposed efforts to obtain exclusive rights in similar phrases (e.g., "Ride

14   Free"[14]) that Harley-Davidson considers to be commonly used expressions in the motorcycling

15   industry.  If Harley-Davidson believed that "Ride Hard" was such an expression, Bell reasons, it

16   would have opposed his registration of the phrase.  The Court finds that Harley-Davidson's

17   opposition to trademark applications for other phrases is an irrelevant fact, as Bell does not dispute

18   that Harley-Davidson lacked knowledge of his original applications to register the "Ride Hard"

19   trademark.  (Second Bischmann Decla. ¶ 16.)

20         At oral argument, when asked for his strongest argument why Harley-Davidson's use of

21   "Ride Hard" did not constitute fair use, Bell cited and discussed several cases addressing the fair

22   use doctrine.  The Court considers and distinguishes each one below.

23         In Brother Records, Inc. v. Jardine, the Ninth Circuit affirmed summary judgment for a

24   record company on its trademark infringement claim against a former member of The Beach Boys

25   who continued solo performances using the record company's "The Beach Boys" trademark.  318

26   F.3d 900, 901-02 (9th Cir. 2003).  The Ninth Circuit held that the defendant "d[id] not use 'The

27   _____

28         [14] Bell alleges that Harley-Davidson registered a trademark in the phrase "Ride Free."  (Bell Memo. ISO Motion, at 5.)  Harley-Davidson disputes this allegation.  (Second Bischmann Decla. ¶¶ 11-12.)

1   Beach Boys' trademark to denote its primary, descriptive meaning of 'boys who frequent a stretch

2   of sand beside the sea.'  Instead, [defendant] use[d] 'The Beach Boys' trademark in its secondary

3   trademark sense, which denotes the music band—and its members—that popularized California

4   surfing culture."  Id. at 907 (footnote omitted).  Therefore, the classic fair use defense did not

5   apply.  Id.  Brother Records does not stand for the proposition that Bell claims, i.e., the fair use

6   defense was inapplicable because defendant did not use "Beach Boys" in its dictionary sense.  The

7   fair use defense is not limited to terms that one can find in a dictionary.  See In re Dual-Deck

8   Video Cassette Recorder Antitrust Litig., 11 F.3d 1460, 1466-67 (9th Cir. 1993) (affirming Rule

9   12(b)(6) dismissal of claim that JVC infringed Go-Video's "VCR-2" trademark because JVC

10  descriptively used "VCR-2" to label terminals on the back of its receivers).  Instead, the fair use

11  defense applies "when the mark is used in its primary descriptive sense rather than its secondary

12  trademark sense."  Brother Records, 318 F.3d at 905.  This Court's reasoning is consistent with

13  Brother Records because this Court has found that Harley-Davidson used "ride hard"

14  descriptively—i.e., to conjure up the feelings of vigor, energy, and purpose that have long been

15  associated with the phrase and that describe the way consumers feel when they buy Harley-

16  Davidson products and merchandise.

17      In Sands, Taylor & Wood Co. v. Quaker Oats Co., the Seventh Circuit held that defendant,

18  the maker of Gatorade, could not rely on the fair use defense when it used the trademarked phrase

19  "Thirst-Aid" in its advertising campaign.  978 F.2d 947, 954 (7th Cir. 1992).  Defendant

20  conducted its campaign in a way "so that 'Thirst Aid' appears as part of a memorable slogan that

21  is uniquely associated with [Gatorade]."  Id.  Bell claims that Quaker Oats stands for the

22  proposition that fair use requires a phrase to be used in good faith to describe a good or product.[15]

23

24  _____

25  [15] Bell reads Quaker Oats to say that the Seventh Court found that defendant's use of "Thirst-Aid" was  descriptive of Gatorade, but otherwise failed the fair use test because defendant used the

26  phrase as a trademark.  However, the Seventh Circuit also analyzed the "descriptive" nature of "Thirst-Aid" for the purpose of placing the phrase among the continuum of trademarks, i.e., in

27  reversing the district court's conclusion that "Thirst-Aid" was a suggestive trademark, as a matter of law.  978 F.2d at 952-53.  This Court need not make a determination about the precise classification of Bell's "Ride Hard" trademark.  In the Ninth Circuit, the fair use defense applies to all relevant

28  trademark categories.  Brother Records, 318 F.3d at 907 (citing Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 269-70 (2d Cir. 1995)).

1   This is a correct statement of the general legal rule (for the most part[16]), but the application in

2   Quaker Oats does not help Bell's position.  Although the Quaker Oats court rejected the

3   proposition that "a defendant's use of a term in conjunction with its own trademark [is] per se a

4   use 'other than as a trademark'", id. at 954 (citing, inter alia, Lindy Pen Co. v. Bic Pen Corp., 725

5   F.2d 1240, 1248 (9th Cir. 1984)), the remaining facts enumerated by the Seventh Circuit are

6   absent here: the use of "Thirst Aid" as an "attention-getting symbol," depicting "Thirst Aid" in a

7   more prominent placement and a larger font than "Gatorade" in the advertisements, and the

8   rhyming quality of the terms.  Id. at 954.  Furthermore, because Quaker Oats found trademark

9   infringement in an advertising campaign, it undercuts Bell's argument that Harley-Davidson's use

10  of "Ride Hard" on merchandise is trademark infringement, even though its use in advertisements is

11  permissible.

12       In Zatarains, Inc. v. Oak Grove Smokehouse, Inc., the Fifth Circuit affirmed a bench trial

13  ruling for defendants, who used the words "fish fry" to describe coating mixes for preparing fried

14  foods.  698 F.2d 786, 788, 796 (5th Cir. 1983).  Although plaintiff held a trademark in the term

15  "Fish-Fri," the district court properly found that defendants used the term fairly and in good faith:

16  they did not intend trademark use, never attempted to register the phrase as a trademark, and

17  packaged the product in a way to reduce consumer confusion.  Id. at 796.  Bell cited Zatarains for

18  two unavailing propositions.  First, Bell claims that the fair use defense is available only with

19  descriptive trademarks.  That rule is not the law of the Ninth Circuit.  See Brother Records, 318

20  F.3d at 907 (citing Car-Freshner Corp., 70 F.3d at 269-70).  Second, Bell claims that the fair use

21  defense can be negated if Harley-Davidson uses his phrase in its "trademark sense," even if Harley

22  does not use the term as a trademark.  This is a distinction without a difference: whether a

23  defendant uses a term "in its trademark sense" or "as a trademark," the inquiry is the same.

24       Finally, in Hillerich & Bradsby Co. v. Christian Brothers, Inc., where the plaintiff had an

25  exclusive license to use the name of famous hockey player Mark Messier on hockey equipment,

26  the Minnesota federal district court granted plaintiff's motion for a preliminary injunction to

27

28       [16] Quaker Oats does not undermine the line of cases holding that use of a phrase can also be
    "descriptive" in the sense of describing the consumer's feeling or self-image upon purchasing the
    defendant's product.

05cv2151

1    prohibit defendant from printing the word "Messier" on defendant's hockey sticks.  943 F. Supp.

2    1136, 1138, 1142 (D. Minn. 1996).  In finding that plaintiff established a likelihood of success on

3    the merits, the Court found that the fair use defense was unlikely to prevail, even though defendant

4    could lawfully advertise the fact that the blade on its hockey sticks matched the shape of Messier's

5    blade.  Id. at 1140-41.  Specifically, the court reasoned, "Advertising similarity to a competitor's

6    product does not cause confusion as to sponsorship or endorsement of goods; misappropriation of

7    a mark [by printing Messier's name on the blades] causes such confusion."  Id. at 1140.  This case

8    does not support Bell's attempt to distinguish Harley-Davidson's use of "Ride Hard" in

9    advertising from its printing "Ride Hard" on apparel and other items.  Instead, Hillerich &

10   Bradsby stands for the proposition that the defendant would not have infringed the plaintiff's

11   exclusive license in the word "Messier" by stating in advertisements that its sticks had the same

12   blade shape that Messier used.  Such a statement in advertising was qualitatively different from

13   stamping the word "Messier" on the stick itself.  That kind of advertisement is distinguishable

14   from the facts of this case, where Harley-Davidson uses the exact same phrase ("Ride Hard" or a

15   variant) both in print advertisements and on merchandise.[17]

16           As a matter of law, Harley-Davidson's use of the phrase "Ride Hard" was a fair use.

17   Defendant is entitled to summary judgment on the first, third, and fourth causes of action.  The

18   Court also grants summary judgment on the fifth cause of action (containing both federal and state

19   trademark infringement claims) because of the substantial congruence in California trademark law

20   and the Lanham Act.  See Netscape Communications, 354 F.3d at 1024 n.10.

21           2.      Remaining Causes of Action

22           The entry of summary judgment for Harley-Davidson on Bell's unfair competition claim is

23   appropriate for two reasons.  First, where a defendant's use of a phrase is "fair use" for purposes of

24   trademark infringement, defendant's conduct cannot be "unfair" for purposes of a Lanham Act

25   unfair competition claim.  Zatarains, 698 F.2d at 796 n.9; Playboy Enters., Inc. v. Terri Welles,

─────────────────

27           [17] For the proposition that Bell did not abandon his trademark during the 2001-05 period (when
     he made no sales), Bell cited Hawaii-Pacific Apparel Group, Inc. v. Cleveland Browns Football
28   Company LLC, 418 F. Supp. 2d 501 (S.D.N.Y. 2006).  Because the Court does not reach the issue of
     whether Bell abandoned his trademark, the Court neither discusses nor distinguishes this case.

Inc., 78 F. Supp. 2d 1066, 1078 (S.D. Cal. 1999), rev'd in part on other grounds, 279 F.3d 796 (9th Cir. 2002); Wonder Labs, Inc. v. Procter & Gamble Co., 728 F. Supp. 1058, 1064 & n.6 (S.D.N.Y. 1990).  Second, as explained supra, Bell's unfair competition claim is, more specifically, an allegation of trade dress infringement.  Bell concedes an absence of authority for a trade dress infringement claim based on "words alone" (Bell Memo. ISO Motion, at 25).

Therefore, the Court enters judgment as a matter of law for Harley-Davidson on the second cause of action.  Because of the substantial congruence between state law and Lanham Act unfair competition claims, the Court grants summary judgment on plaintiff's sixth cause of action for violation of California's unfair competition laws (including Business and Professions Code § 17200).  Cleary, 30 F.3d at 1262-63.

Finally, the Court grants summary judgment to Harley-Davidson on Bell's claim for misappropriation.  The federal component of this claim cites the statute prohibiting infringement of trademarks regardless of registration, 15 U.S.C. § 1125(a).  The Court grants summary judgment on the federal component for the reasons discussed in the Court's analysis of the fair use defense supra.  California's common-law doctrine of misappropriation does not apply to trademark infringement.  Toho Co., Ltd., 654 F.2d at 791; Mattel Inc., 28 F. Supp. 2d at 1157.  Therefore, summary judgment to Harley-Davidson on the state-law component of Bell's misappropriation claim is likewise appropriate.

Because Harley-Davidson is entitled to judgment as a matter of law on all seven of Bell's causes of action, the Court grants Harley-Davidson's motion in its entirety.

**CONCLUSION**

For the reasons stated herein, the Court **GRANTS** Harley-Davidson's motion for summary judgment and **DENIES** Bell's motion for summary judgment.

Harley-Davidson's counterclaims for abandonment based on loss of significance, abandonment through non-use, and federal unfair competition remain for adjudication.  (See Doc. No. 51 (Third Amended Answer and Counterclaim).)  The Court **GRANTS** the parties' joint motion to vacate the Court's previous Scheduling Order and **RESETS** dates as follows:

—Each side **shall file** its memorandum of contentions of fact and law within thirty (30) calendar

1    days of the date that this Order is electronically docketed.

2    —The parties **shall lodge** the Proposed Final Pretrial Order on or before <u>April 18</u>, <u>2008</u>.

3    —The Court **shall hold** the Final Pretrial Conference on <u>April 25</u>, <u>2008</u> at <u>10:30 a.m.</u> in

4    <u>Courtroom 6</u>.

5        **IT IS SO ORDERED.**

6

7    DATED:  March 3, 2008

8                                              _Janis L. Sammartino_
                                             Honorable Janis L. Sammartino
9                                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05cv2151